UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

JEFFREY SCOTT TENNANT,

      Plaintiff,

      v.                                                            Case No. 11-C-0495

MICHAEL J. ASTRUE,

      Defendant.

DECISION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER
AND REMANDING FOR FURTHER PROCEEDINGS

Jeffrey Scott Tennant appeals from the Social Security Administration's denial of his request for Supplemental Security Income disability benefits before his fiftieth birthday. Tennant alleges that his benefits should have begun on the date of his application for benefits, September 8, 2008, because of his epididymitis and testicular cysts, back problems and pain, and dyslexia.

Tennant's claim for benefits was denied initially and upon reconsideration. Thereafter, the Administrative Law Judge conducted a hearing on August 25, 2010, at which Tennant, unrepresented by counsel, testified. A vocational expert also testified. On October 15, 2010, the ALJ found in Tennant's favor as of Tennant's fiftieth birthday in September 2010 but denied benefits for the period between Tennant's application for benefits and his fiftieth birthday. The ALJ determined that Tennant had the residual functional capacity (RFC) "to perform sedentary work as defined in 20 C.F.R. § 416.967(a) that involves simple 1-2 step tasks that can be learned by demonstration only and that requires maximum continuous sitting of no more than one hour at which time the claimant will require 1-2 minute period of position change." (Tr. 12.) In addition, the ALJ found that

beginning on Tennant's fiftieth birthday, considering Tennant's age, education, work experience, and RFC, the Medical Vocational Rule 201.10 (also known as the "grids") directed a finding of disabled.  (Tr. 14-15.)  However, prior to the date Tennant's age category changed, jobs that he could have performed existed in significant numbers in the national economy.  (Tr. 14.)

On April 20, 2011, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tennant filed this appeal on May 23, 2011, again representing himself.  He asserts that the ALJ committed errors of law and the decision was not supported by substantial evidence.  (Doc. 1 at 1.)

In his complaint Tennant states that he wanted an earlier effective date for benefits, cites the treating-physician rule, and notes his back injury at a job in 1980 and lumbar disc herniation.  (Doc. 1 at 2.)    He filed a very short brief, in which he argued:

> THE RECORD SPEAKS FOR ITSELF. . . . I am and have long been DISABLED.  Have you any evidence to the contrary? . . . I do not have so much as a High School Diploma as I struggled with DYSLEXIA ALL OF MY LIFE.  MEDICAL records prove that I have been sever[e]ly injured and that I have had surgeries and that I have not been gainfully employed. . . . You have my medical history.  Radiological exams and medical exams confirm severe lumbar spine degeneration.

(Doc. 16 at 1.)  In a letter attached to the brief (addressed to the Appeals Council), Tennant requested an earlier effective date based on his injury back in 1980, lumbar spine degenerative disc disease, surgery for epididymitis, and dyslexia.  He stated that he was struggling against "a culture that seems less than objective in rendering a fair and impartial hearing, giving claimant due weight of credibility for his history."  (Doc. 16 at 2.)

Because Tennant proceeds pro se, his filings are given a liberal construction.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

2

On review, the court will overturn the Commissioner's final decision only if it lacks support by substantial evidence, is grounded in legal error, or is too poorly articulated to permit meaningful review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). The court views the record as a whole but does not reweigh the evidence or substitute its judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ is not required to address every piece of evidence or testimony presented, but must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that examination. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). However, the court's review is confined to the rationale provided in the ALJ's decision. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

The ALJ goes through a five-step process for analyzing claims. For steps four and five the ALJ must determine the claimant's RFC. RFC is the most the claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p; *Young*, 362 F.3d at 1000-01. The Administration must consider all of the claimant's known, medically determinable impairments when assessing RFC. § 404.1545(a)(2), (e). At step five the ALJ determines whether the claimant has the RFC, in conjunction with age, education, and work experience, to make the adjustment to other work. If the claimant can make the adjustment, he is found not disabled. If he cannot make the adjustment, he is

found disabled. 20 C.F.R. 404.1520; *see Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The "medical-vocational guidelines" or "grids" are tables appended to Social Security Administration regulations regarding disability benefits. 20 C.F.R. pt. 404, subpt. P, app. 2; *see Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). The grids are used at step five of the ALJ's sequential analysis. *See* 20 C.F.R. § 416.969; *Zurawski*, 245 F.3d at 889. They set forth various combinations of exertional RFC and vocational factors of age, education, and previous work experience, giving the resulting decision (disabled or not disabled) for someone with those characteristics. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a). If a claimant's characteristics match that of a grid precisely, the claim is determined as indicated in the rule. *Id.*; *accord* 20 C.F.R. § 416.969. If a claimant's characteristics vary from the grids because his RFC exertional limits do not fit into a category exactly or because nonexertional limitations exist, "a conclusion of disabled or not disabled is not directed." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(d). In such a case, the ALJ uses the grids only as a framework for decision. *Id.*; SSR 84-13. According to the ALJ's decision, Tennant was awarded benefits upon his fiftieth birthday because his grid category changed to one that directed a finding of disabled. *See* 20 C.F.R. § pt. 404, subpt. P, app. 2, § 201.10.

On appeal, Tennant misunderstands the burden of proof. He asks the Commissioner to provide evidence that he is not disabled, but the burden has always been his to show disability. In addition, Tennant focuses on his dyslexia and back conditions, though he admitted to the ALJ that neither of those conditions was completely disabling.

4

Nevertheless, the case must be remanded to the Commissioner because the ALJ did not address Tennant's credibility properly and failed to consider and explain his rejection of Tennant's conditions of frequent urination, swollen feet, and pain when deciding RFC.

At the hearing, Tennant provided significant testimony about his epididymitis, testicular cysts, and their effects. As indicated by the Commissioner, epididymitis is inflammation of the epididymis, a tightly coiled segment of the spermatic duct. Tennant testified that because of the condition he was up at least ten times each night to use the bathroom, and, when he did not do so, he suffered pain. (Tr. 47.) Also, Tennant's feet swelled at night and he had difficulty walking. (Tr. 47.) Tennant testified that because of the frequent need to urinate at night and his painful feet, he kept a jar next to his bed to urinate in so he did not have to get out of bed and go to the bathroom each time. (Tr. 47, 68.) The groin pain was alleviated some by sitting in a hot bathtub, as well as lying down and massaging the groin area. (Tr. 49.) Tennant testified that his biggest problems were groin, genital, and testicle pain and then the swelling and pain in his feet.[1] (Tr. 49.)

In addition, Tennant testified that each morning when he woke up he was in pain. (Tr. 46.) He said that most days he stayed in bed in his pajamas, perhaps going out on the front porch. (Tr. 54.) Tennant added that he could go out some days, but sometimes had to stay in the house for a couple days to rest. (Tr. 54.) Once, Tennant was given a nerve block, but it worked for only four hours. (Tr. 48.) At the time of the hearing Tennant had

---

[1]Tennant acknowledged that his back pain was not as bad as his testicle pain and that it would not keep him from working if it was his only problem. (Tr. 58-59.) He acknowledged that his dyslexia would not keep him from working. (Tr. 44.) He thought that he could do sit down work if he did not have the testicle pain. (Tr. 68.)

5

run out of narcotic pain medications such as Percocet, Vicodin, and Oxycontin and was to go to a pain clinic. (Tr. 50.)

During the vocational expert's testimony, Tennant broke in, saying that he had "to use the bathroom, bad." After the ALJ told him to "[h]ang on" because they were almost done, the record reflects Tennant saying "[o]h, shit" and the ALJ telling Tennant to go to use the bathroom. (Tr. 80.)

Shortly after Tennant's bathroom break, the following colloquy occurred between the ALJ and vocational expert regarding a hypothetical question about a person of Tennant's age, education and past work history who could do heavy work without any limitations other than as described:

> Q . . . . But, for one problem, because of his pain and flare-ups of pain, he's absent from work at least one day a week. Are there jobs for that person?
>
> A In my opinion, your honor, that person would not be successful. An employer would [INAUDIBLE] who is absent that often, whether it's the jobs that I listed or any other jobs in the economy.
>
> Q Okay. What if this person showed up every day, but, because of his different issues with pain, maybe because of urinary frequency or urgency, he needed, let's say, four unscheduled ten minute breaks a day.
>
> A That person, again, in my opinion, would not be able to perform the jobs I listed or any other job in the economy successfully.

(Tr. 81-82.)

The ALJ addressed Tennant's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these

6

> symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment.

(Tr. 12.) In *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012), the Seventh Circuit held a virtually identical statement (according to the Seventh Circuit the language is from an Administration "template") to be an insufficient credibility finding as it reverses the decision process. Credibility must be determined first, yet the passage implies that RFC is determined first and the credibility finding made to fit the RFC determination.

Here, the ALJ added discussion regarding credibility beyond the language rejected in *Bjornson*. He noted Tennant's urinary frequency and the need for a break on short notice during the hearing and that Tennant "presented as mildly uncomfortable." Also, the ALJ considered Tennant's reports that he slept poorly due to his frequent urination at night. And according to the ALJ, Tennant's "findings on scrotal ultrasound document multiple cysts that could reasonably cause the problems he alleges." (Tr. 13.) The ALJ mentioned abnormalities on Tennant's spine MRIs and relates them to Tennant's complaints of joint and foot pain. The ALJ then noted Tennant's denial of cocaine abuse and claim that he had not had a drug issue since 2008, but admission regarding heroin use and related arrests. (Tr. 13.) In conclusion, the ALJ stated that although he "was not impressed that claimant was completely honest at the hearing regarding his substance abuse history/issues, [he was] impressed that the evidence in his case demonstrates that his impairments limit him to sedentary work that is simple and requires a change of position every hour." (Tr. 13.)

As in multiple cases before this court, the ALJ confused credibility with RFC. Although the ALJ found that Tennant was not completely honest about his substance

7

abuse, the ALJ failed to say whether the remainder of Tennant's testimony was credible. Instead, he again seemed to make the RFC determination first and then fit the credibility determination to the RFC. Hence, under *Bjornson*, this case must be remanded for the ALJ to make a proper credibility finding that better explains which portions of Tennant's testimony have been rejected and why.

Further, assuming that the only portion of Tennant's testimony the ALJ found not credible related to substance abuse, the ALJ failed to build the logical bridge between the evidence and his RFC. Also, the ALJ failed to reject Tennant's testimony regarding his need for frequent and urgent breaks to urinate, yet the ALJ did not include in the RFC an allowance for frequent unscheduled breaks, even after finding that the medical evidence of testicle cysts supported that testimony. The bathroom break during the hearing was itself evidence that supported an RFC including frequent unscheduled breaks. Even so, the ALJ did not discuss why he rejected it for the RFC finding. Also, the ALJ failed to reject Tennant's testimony regarding swollen feet, while the RFC does not limit the time Tennant can stand. Similarly, the ALJ did not explain why Tennant's fatigue and pain, mentioned in testimony as well as Tennant's physical activities questionnaire and function report (Tr. 175, 189), did not result in an RFC that allowed for days off work. If the RFC contained such limitations, the vocational expert's testimony concerning missed work days and frequent unscheduled breaks would seem to indicate that no jobs exist for someone with Tennant's limitations.

In sum, the case must be remanded for a proper finding of credibility and sufficient examination of evidence that supports an RFC with more limitations. Therefore,

8

Case 2:11-cv-00495-CNC   Filed 09/28/12   Page 8 of 9   Document 27

IT IS ORDERED that the decision of the Commissioner is reversed and this matter is remanded for further proceedings regarding benefits between the date of application and Tennant's fiftieth birthday, pursuant to 42 U.S.C. § 405(g) (sentence four) .

Dated at Milwaukee, Wisconsin, this 28th day of September, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE